162 N.J. Super. 469 (1978)
393 A.2d 600
MARILYN MENDELL, PLAINTIFF-RESPONDENT,
v.
MICHAEL RALPH MENDELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1978.
Decided September 27, 1978.
*471 Before Judges LYNCH and HORN.
Ms. Nancy C. Ferro argued the cause for appellant (Messrs. Ferro, Lamb & Kern attorneys).
*472 Mr. Barry I. Croland argued the cause for respondent (Messrs. Stern, Steiger, Croland & Bornstein, attorneys; Mr. Kenneth S. Goldrich on the brief).
The opinion of the court was delivered by HORN, J.A.D.
The issue in this appeal by defendant husband is whether he is entitled to a modification of certain terms of a "Property and Support Agreement" executed by him and plaintiff wife on September 19, 1974, incorporated by reference in the judgment of divorce entered on January 28, 1975. Following the judgment the parties amended the agreement on July 14, 1976.
Under the terms of the 1974 agreement, drawn when each party was represented by counsel, upon the sale of the parties' jointly-owned house[1] the wife was to receive a relatively small share of the proceeds and would then waive all rights to receive support and maintenance and certain other benefits. Simultaneously with the sale of the house she was to receive certain other assets by transfer from defendant husband. Specifically as related to the instant controversy, this agreement provided as follows:
The husband further represents and warrants that he is the sole owner of an undivided 1/3 interest in an investment known as the Regency Park Associates (mortgage) investment in Agawam, Massachusetts. The husband shall, simultaneously with the conveyance for value of the marital home, execute whatever documents are required to transfer free and clear and tax free to the wife his undivided 1/3 interest in the said Regency Park Associates investment. This document shall be self-executing in this regard, and a closing on the marital home shall operate to transfer Regency, although husband will execute whatever further documents are reasonably required. Between the date of execution of this agreement and the date of transfer of his interest in this investment, husband agrees that, in connection with this investment, he shall not transfer it, mortgage it, encumber it, give it, sell it, pledge it, use it as security for any business or personal loan, or perform any act with it which would *473 in any way affect the wife's ultimate ownership interest in Regency. Wife agrees that she shall not, prior to conveyance of the marital home, place upon any public record any evidence of this obligation of husband to convey his interest in Regency. The wife shall receive all of the monthly payments from the said Regency Park Associates investment commencing in the first month after the month in which the marital home is conveyed to a bona fide purchaser for value. (The husband shall pay the state or local stamp transfer tax in connection with the transfer of the Regency Park Associates investment to the wife, up to the first $1,000.00, the wife shall pay such taxes in excess of $1,000.00 but less than $2,000.00 and if the said stamp transfer taxes are greater than $2,000.00 the parties shall pay such taxes equally.)
This interest in the Regency Park mortgage was being liquidated by constant monthly payments of $2,392.07. The marital home was sold on February 2, 1976. The parties subsequently entered into negotiations for the purpose of revising the September 1974 agreement. Apparently, defendant had not transferred his interest in the Regency Park mortgage because such a transfer would have had a significant adverse tax impact. Therefore, a supplemental agreement was reached, dated July 14, 1976. It provided for the husband to pay the wife $9,000 in full satisfaction of amounts asserted by her as being due under the original agreement. This amount was to be paid in installments of $100 or $200, the smaller amount being allowed for any month in which the husband would be unemployed. Twenty-five percent "of each payment received by the wife shall be deemed to be alimony and the balance * * * shall be non-taxable to her." Upon default the entire balance was to become due. The supplemental agreement was similar in its provision as to the monthly payments of $2,392.07 to plaintiff. Although it omitted the provision for transfer of the undivided one-third interest to the wife, the language was otherwise substantially repeated. Added, however, was the following:
* * * The parties acknowledge that of the total yearly payments received by the wife from the husband in connection with the said Regency Park Associates investment, $12,547.56 per calendar year [out of a total of $28,704.84] shall constitute alimony payments to *474 the wife on which she shall be responsible to pay taxes and the balance of the yearly payments, which shall be a portion of the equitable distribution to the wife of the assets acquired by the parties during the marriage, shall be non-taxable to the wife. [Emphasis supplied]
The supplemental agreement further provided that the husband shall not transfer or in any way encumber his interest and shall execute whatever documents are necessary to give the wife an unconditional secured interest, and that the wife is entitled to use her right to receive payments as collateral security for a loan to her. Finally, the agreement states that if the husband predeceases the wife she "shall be deemed to be and shall be the sole owner of the husband's remaining interest in the said investment." Moreover, "[t]he wife's rights under this paragraph are absolute and they shall not be affected in any way by her remarriage, death or any other event."
After the July 14, 1976 amendment to the 1974 agreement, defendant failed to meet the arrearage payments he agreed to. Plaintiff then moved for enforcement of litigant's rights as to same, and, among other relief, sought judgment for $8,400, the balance due under the arrearage agreement. Plaintiff also sought to have the monthly Regency Park mortgage payments sent directly to her bank.
Defendant cross-moved for modification of the January 1975 divorce order or a plenary hearing. In particular, he sought to have the court reduce plaintiff's share of the Regency Park mortgage, on the ground that his circumstances had adversely changed, in that his income as a real estate broker had been reduced drastically.
After a hearing on said motion the judge ordered, among other things, that defendant execute whatever documents were required to permit plaintiff's bank to receive and deposit in her account the monthly Regency Park mortgage payments of $2,392.07. The order also provided for defendant to liquidate the balance of the arrearage mentioned in the supplemental agreement. Defendant's application for modification of plaintiff's interest in the mortgage or a *475 plenary hearing was denied. Defendant appealed from said order denying a reduction in plaintiff's interest in the Regency Park mortgage.
Although the trial judge did not expressly hold that the Regency Park mortgage interest was assigned to plaintiff as part of the equitable distribution of the parties' assets, it is implicit that that was his ruling. On the other hand, defendant contends, as argued before the judge, that said mortgage payments to plaintiff should be characterized as alimony.
The parties agree that it is crucial to determine the character of the Regency Park mortgage payments, in recognition of the law that if such payments are being made pursuant to a property settlement agreement, they are not subject to modification by a court.
There are vast differences between an award of alimony and an award of property by way of equitable distribution. These differences relate not only to the purposes of each form of distribution, but also to the consequences and whether or not the court has any future control over the award.
Alimony is a purely personal right in nature of an annuity, the purpose of which is to require a spouse to pay to the other, periodically, such sum or sums as, in view of the circumstances and necessities of the party entitled thereto and the abilities of the other to provide, will reasonably fulfill the continuing duty of support of one spouse to the other. O'Loughlin v. O'Loughlin, 12 N.J. 222 (1953), cert. den. 346 U.S. 824, 74 S.Ct. 42, 98 L.Ed. 350 (1953); N.J.S.A. 2A:34-23. Alimony awards are subject to continuous review by courts, and their enforcement is within the court's discretion. Martindell v. Martindell, 21 N.J. 341 (1956). The allowance of alimony does not confer upon the receiving spouse any interest in the assets of the paying spouse.
A major difference between the two types of awards is that alimony is awarded to defray the expenses of supporting *476 a spouse post divorce, whereas, fundamentally, equitable distribution is awarded for recognized contributions that each spouse has made toward the accumulation of property during the time span of the viable coverture. Painter v. Painter, 65 N.J. 196 (1974); Rothman v. Rothman, 65 N.J. 219 (1974). Cf. Smith v. Smith, 72 N.J. 350, 361-362 (1977).
If the character of the mortgage payments transferred to plaintiff were alimony, the court would have the authority to grant relief to defendant upon a showing of changed circumstances, notwithstanding that the payments accrued to plaintiff by virtue of an agreement between the parties rather than by court decree. Smith v. Smith, supra at 360. But that is not true if the nature of the payments were part of the equitable distribution of the marital assets. The transfer of the property as part of such distribution constitutes an effective acquisition by the distributee, and the property thereafter is that spouse's, free and clear of any claim of right to or interest in same on the part of the other spouse. Rothman, supra, 65 N.J. at 229; Smith v. Smith, supra, 72 N.J. at 358; Woliner v. Woliner, 132 N.J. Super. 216, 223 (App. Div. 1975), aff'd o.b. 68 N.J. 324 (1975).[2]
We come now to the question of whether the Regency Park mortgage payments represent alimony or installment payments under a property settlement agreement. Although in some instances where separation agreements contain both elements of support and distribution of property it may be difficult to distinguish between the two, such is not the instant case. See Smith v. Smith, supra, 72 N.J. at 358. We have no difficulty in agreeing with the trial judge's apparent conclusion that the agreed payments were intended to be acquired absolutely by plaintiff and constituted a part of *477 the scheme of the parties for distribution of the assets acquired during the marriage. It is abundantly clear that the transfer of the mortgage interest was intended to be absolute, part of the distribution of the accumulated assets and in consideration of the relinquishment by plaintiff of other claims, including alimony.
The first agreement in 1974 unimpeachably characterizes the mortgage interest as plaintiff's share of the marital assets. The record is clear that the modification of the agreement in 1976 was effected by the parties for the sole purpose of avoiding significant adverse tax consequences to defendant if the asset were transferred outright, as originally contemplated. Cf. Painter, supra, 65 N.J. at 212-213.
Notwithstanding the language of the supplementing agreement that $12,547.56 of the total annual payment to plaintiff "shall constitute alimony payments," the intention of the parties comes through unambiguously. The alimony label did not change the sense and intention of the agreement. Defendant nonetheless lost all control over the asset. He was deprived of ability to transfer or encumber the interest and was obliged to provide for the direct payment to plaintiff. Moreover, it was provided that plaintiff's rights are absolute and cannot be affected in any manner by any event. In conclusion, the supplemental agreement did not convert the Regency Park mortgage provision into an alimony payment.
In view of this conclusion, it follows that defendant had no right to the modification sought by him and the trial judge correctly denied such relief. It also follows that defendant was not entitled to a plenary hearing for the purpose of exhibiting the change of his financial circumstances, since such change, even if shown, could not legally effect the modification which he sought. Barrie v. Barrie, supra.
Affirmed.
NOTES
[1] Although not expressly specified in the agreement, it was clearly apparent that an early sale was contemplated.
[2] This is not to say that such agreements may not be challenged for fraud, deceit or concealment, as with any other agreement. Palko v. Palko, 73 N.J. 395 (1977); Barrie v. Barrie, 154 N.J. Super. 301 (App. Div. 1977), certif. den. 75 N.J. 601 (1978).