IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SAMUEL WOODS,[1] | § | |
| | § | |
| Respondent Below, | § | No. 412, 2015 |
| Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| JESSICA WOODS, | § | File No. CK08-03006 |
| | § | Petition No. 14-11570 |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: December 4, 2015
Decided: February 5, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, and **SEITZ**, Justices.

# **O R D E R**

This 5th day of February 2016, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     The appellant, Samuel Woods ("the Father"), filed this appeal from a Family Court decision granting the Petition for Specific Performance filed by the appellee, Jessica Woods ("the Mother"), and a Family Court order denying the Father's Motion to Reopen the Family Court's decision on the Petition for Specific Performance.  We find no error or abuse of discretion in the Family Court's decisions.  Accordingly, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2) The Mother and the Father, who divorced in 2009, are the parents of a daughter born in June 2001 ("the Daughter"). The Daughter has an anxiety disorder not otherwise specified. The parents entered into a Stipulation for Custody and Visitation that was signed by the Family Court on August 24, 2011 and an amended Stipulation for Custody and Visitation that was signed by the Family Court on November 21, 2013 ("Stipulations"). The Stipulations provided, among other things, that: (i) the parents had joint custody of the Daughter with the Mother having primary residential placement; (ii) summer visitation was to be taken in one-week increments only, except both parties could take one two-week increment; (iii) the parents would provide each other with certain information when taking the Daughter outside of the community; (iv) the Mother had the right of first refusal to watch the Daughter over any family member, with one exception, if the Father was working; (v) the parents agreed the Daughter would receive counseling from Dr. Vaughn and they would follow Dr. Vaughn's recommendations for counseling and treatment; and (vi) the parents agreed to cooperate on reaching agreement as to any necessary medication for the Daughter and to follow the recommendations of Dr. Goldstein and Dr. Kaza.[2]

(3) The Mother subsequently filed a Petition for Specific Performance requiring the Father to comply with the Stipulations. The Mother alleged, among

---

[2] Appellee's Appendix to Answering Brief at B2-3, B225, B227, B231.

other things, that the Father had submitted proposed summer visitation schedules that did not comply with the terms of the Stipulations, refused to provide compliant schedules, and involved the Daughter in requests for changes to the visitation schedule, despite Dr. Vaughn's recommendation and the parties' agreement that the parties would not change the visitation schedule for at least one year or involve the Daughter in requests for changes because the changes increased the Daughter's anxiety. The Father filed an answer denying the Mother's allegations.

(4) The Mother filed an Amended Petition for Specific Performance alleging that the Father had refused to sign forms required by Dr. Vaughn for continued treatment of the Daughter and deprived her of her right to first refusal to watch the Daughter over the summer when the Father was working. Dr. Vaughn received the signed forms from the Father a day before the deadline set for submission of the forms.

(5) The Family Court held a hearing on the Mother's petitions for specific performance on January 22, 2015 and March 19, 2015. Both parents were represented by counsel. The Family Court heard testimony from Dr. Vaughn, the Mother, and the Father. In addition to testimony on the matters raised in the Mother's petitions, the Family Court heard testimony from the parties' regarding the Father's recent decision to reduce the amount of Paxil, an anti-anxiety medication, taken by the Daughter without discussing that reduction with the

3

Mother or Dr. Vaughn or obtaining the Mother's agreement to the reduction. The Family Court took the matter under advisement. On March 25, 2015, the Father's counsel filed a motion to withdraw, which the Family Court granted on June 5, 2015.

(6) In a decision dated June 8, 2015, the Family Court granted the Mother's petitions for specific performance. The Family Court found that the Father had repeatedly violated the Stipulations and the Mother was entitled to specific performance of the Stipulations. The Family Court also granted the Mother's request for sole medical decision making authority, but denied the Mother's request for sole educational decision making authority. Finally, the Family Court awarded the Mother attorneys' fees under 13 *Del. C.* § 1515. The Father was ultimately ordered to pay $2,500 of the Mother's attorneys' fees and costs, approximately half of the amount sought by the Mother.

(7) On June 29, 2015, the Father filed a *pro se* Motion to Reopen. In the Motion to Reopen, the Father contended that his former counsel failed to offer certain evidence, including the Mother's alleged violations of the Stipulations, the Mother testified more than him, and the Daughter did not testify. The Father also argued that the Mother had sufficient income to pay her attorneys' fees and should not be entitled to recover attorneys' fees in light of her own violations of the

4

Stipulations. The Family Court denied the Motion to Reopen. This appeal followed.

(8) This Court's review of a Family Court decision includes a review of both the law and the facts.[3] Conclusions of law are reviewed *de novo*.[4] Factual findings will not be disturbed on appeal unless they are clearly erroneous.[5] We will not substitute our opinion for the inferences and deductions of the trial judge if those inferences are supported by the record.[6]

(9) On appeal, the Father essentially challenges the factual findings of the Family Court. The Father also makes new factual allegations regarding the Mother's behavior and violation of the Stipulations that were not raised at the Family Court hearings, but we cannot consider claims that were not before the Family Court in the first instance for the first time on appeal.[7] Based upon our review of the record, we are satisfied that the Family Court's factual findings are supported by the record.

(10) The Father admitted that he unilaterally reduced the Daughter's Paxil dosage without trying to obtain the Mother's agreement. Dr. Vaughn testified that she told the parents, and the parents agreed, not to make changes to the visitation schedule or involve the Daughter in changes to the schedule in order to reduce the

---

[3] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[4] *Id.*
[5] *Id.*
[6] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[7] Supr. Ct. R. 8; *Delaware Elec. Coop., Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997).

Daughter's anxiety, but the Father continued to request changes and involve the Daughter in those requests. The Mother offered similar testimony and also testified the Father failed to give her the right to first refusal to watch the Daughter when the Father was working and failed to provide her with information about trips outside of the community. To the extent the Father contends that the Family Court accepted the testimony of Dr. Vaughn and the Mother over his testimony, we will not substitute our opinion for that of the Family Court.[8] Having carefully reviewed the record, we conclude that the Family Court did not err in finding that the Father violated the Stipulations, that the Mother was entitled to specific performance of the Stipulations, and that the Mother should have sole decision making authority regarding the Daughter's medical care.

(11) As to the award of attorneys' fees, the Family Court has broad discretion to award attorneys' fees under 13 *Del. C.* § 1315.[9] The Family Court ultimately ordered the Father to pay $2,500 of the Mother's attorneys' fees and costs, approximately half of the amount sought by the Mother. Having carefully reviewed the record, we conclude that the Family Court did not abuse its discretion in awarding the Mother half of her attorneys' fees and costs.

---

[8] *Wife (J.F.V.)*, 402 A.2d at 1204.
[9] *Wheeler v. Wheeler*, 636 A.2d 888, 892 (Del. 1993).

6

(12)   Finally, we review the Family Court's denial of a motion to reopen only for an abuse of discretion.[10]   The Family Court may reopen a judgment upon a showing of: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) satisfaction of the judgment; or (6) extraordinary circumstances justifying relief from the operation of the judgment.[11]   Upon review of the record in this case, we find no abuse of the Family Court's discretion in its refusal to reopen the judgment based upon the Father's contentions that his former counsel failed to offer certain evidence, the Mother testified more than him, and the Daughter did not testify.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

---

[10]*Hoffman v. Hoffman*, 616 A.2d 294, 297 (Del. 1992).
[11] Fam. Ct. Civ. R. 60(b); *Hoffman*, 616 A.2d at 297.