**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

SARN SD3, LLC,         )
                                         )
        Plaintiff            )
                                         )
        v.                )     C.A. No.: N17C-12-185 EMD CCLD
                                         )
CZECHOSLOVAK GROUP A.S.,  )
                                         )
        Defendant.      )
                                         )

Submitted: January 18, 2023[1]
Decided: April 27, 2023

*Upon Plaintiff SARN SD3 LLC's Rule 60 Motion to Amend the Court's Count I Decision*
***DENIED***

Mackenzie M. Wrobel, Esquire, Duane Morris LLP, Wilmington, Delaware, Ryan E. Borneman, Esquire, Duane Morris LLP, Philadelphia, Pennsylvania, *Attorneys for Plaintiff SARN SD3 LLC*.

Philip Trainer, Jr., Esquire and Tiffany Geyer Lydon, Esquire, Ashby & Geddes, Wilmington, Delaware, Kenneth J. Pfaehler, Esquire, Dentons US LLP, Washington, D.C., *Attorneys for Defendant Czechoslovak Group A.S.*

**DAVIS, J.**

## I. INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. This action involves breach of contract claims brought by Plaintiff SARN SD3 LLC ("SD3")[2] against Defendant Czechoslovak Group A.S. ("CSG"). SD3 alleges that CSG breached the parties' Call Option Agreement (the "Agreement"). On December 23, 2020, the Court issued its decision (the "Decision")[3] on SD3's Motion for Partial Summary Judgment[4] on Count I of the

---

[1] D.I. No. 339.
[2] Capitalized terms not defined here shall have the meanings ascribed to them in the Decision.
[3] *SARN SD3 LLC v. Czechoslovak Group A.S.*, 2020 WL 12719975 (Del. Super. Dec. 23, 2020).
[4] D.I. No. 183.

Complaint—Breach of Contract Concerning the Penalty Amount (the "SJ Motion"). The Court granted most of the relief sought in the Motion but deferred ruling on a "good faith and fair dealing" dispute raised by CSG as to the PwC Report (as defined in the Decision). On November 15, 2021, the Court found that the evidentiary record demonstrate that the PwC Report does not constitute a breach of good faith and fair dealing (the "Supplemental Decision").[5]

The Court is now addressing Plaintiff SARN SD2 LLC's Rule 60 Motion to Amend the Court's Count I Decision (the "Motion") filed by SD3. SD3 asks the Court to amend the Decision and reset the Penalty Amount. CSG opposes the relief. The Court held a hearing on the Motion on January 10, 2023. At the end of the hearing, the Court took the Motion under advisement. Subsequently, SD3 filed an additional paper to address an issue purportedly arose at the hearing.

For the reasons set forth below, the Court **DENIES** the Motion.

## II.     BACKGROUND

On December 13, 2017, SD3 filed its original Complaint against CSG. CSG moved to dismiss the Complaint. The Court granted in part and denied in part CSG's motion on September 13, 2018. SD3 filed an Amended Complaint on September 28, 2018. CSG filed its original Partial Answer on October 12, 2018. After additional motion practice, CSG filed its Amended Answer and Counterclaim on February 25, 2019.

SD3 brought two claims against CSG in the Amended Complaint. In Count I, SD3 asserted a claim against CSG for failing to pay the Penalty amount owed under the Agreement. SD3 asserted a separate breach of contractual fiduciary duty claims in Count II.[6]

---

[5] *SARN SD3 LLC v. Czechoslovak Group A.S.*, 2021 WL 5710897 (Del. Super. Nov. 15, 2021).
[6] SD3 and CSG resolved Count II that resulted in a stipulated dismissal of that claim. Mot ¶ 1 n.4.

2

The Court entered a confidentiality order on March 4, 2019.[7] The parties then commenced the discovery process.[8] According to the docket, SD3 initiated third-party discovery as early as June 12, 2019.[9] On July 1, 2019, SD3 served a second set of requests for production and interrogatories and CSG propounded its first requests for production of documents and interrogatories.[10] Next, SD3 moved the Court for orders issuing letters rogatory for subpoenas seeking documents.[11] CSG objected to these motions.[12] The Court overruled CSG's objection and granted the motions on July 29, 2019.[13]

The parties each needed one of the Big Four accounting firms to provide a valuation of RETIA in connection with Count I. As discussed in detail in the Decision, these valuations are necessary to determine the Penalty Amount. CSG retained EY. SD3 hired PwC on July 26, 2018.[14] PwC needed information from RETIA and E&Y to calculate the valuation of RETIA for SD3.

The Court needed to get involved in the production of valuation information to PwC.[15] During discovery, CSG produced a "Highly Confidential" copy of the EY Report to SD3's litigation counsel.[16] Given that designation, SD3 could not generally access or review the EY Report, nor could PwC speak with SD3 concerning assumptions or approaches taken by EY in the EY Report.[17] SD3 made repeated requests for CSG to reproduce the EY Report without the

---

[7] D.I. No. 43.
[8] SD3 first commenced discovery on CSG on September 6, 2018. D.I. No. 25.
[9] D.I. No. 51.
[10] D.I. Nos. 59 and 60.
[11] D.I. Nos. 61-70.
[12] D.I. No. 77.
[13] D.I. Nos. 83-98.
[14] *SARN SD3 LLC,* 2020 WL 12719975, at *4.
[15] *Id.; see also* D.I. No. 142 and D.I. 145.
[16] *SARN SD3 LLC,* 2020 WL 12719975, at *4
[17] *Id.*

overbroad confidentiality designation that prohibited SD3 and PwC's access.[18] CSG never

delivered a re-designated EY Report despite representing that one was forthcoming.[19]

On September 9, 2019, SD3 filed a Motion to Vacate Confidentiality Designations,

which the Court granted on October 28, 2019. After two additional weeks, and following yet

another request from SD3, CSG finally produced the re-designated EY Report on November 15,

2019.[20]

PwC could not start its work until CSG and RETIA provided required information to

PwC.[21] PwC and SD3 did not get immediate access.[22] PwC and SD3 were delayed until after

this Court's Order dated October 28, 2019 and instructions at a December 20, 2019

teleconference.[23] After December 20, 2019, PwC began obtaining answers to its questions from

CSG's principals concerning the EY Report.[24] PwC made repeated requests of CSG and RETIA

for financial information necessary for its valuation.[25] PwC issued its report on March 10,

2020.[26]

PwC is also SD3's litigation financial advisor/expert. This role was litigated in

connection with Count I. The Court addressed the overlapping roles PwC plays in the Decision[27]

and in the Supplemental Decision.[28]

The COVID-19 pandemic (the "Pandemic") interrupted this case. Moreover, the

Pandemic made actions in this case even more difficult. All civil proceedings had to continue

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at *5.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at *4-5, *11-12.
[28] *SARN SD3 LLC,* 2021 WL 5710897, at *1-3.

4

with discovery during the Pandemic, but discovery productions and depositions took on unique challenges. This logistics in this case were challenging. While filed in Delaware, the parties needed discovery from Europe as well as in the United States. The Court had to issue orders for discovery overseas in the form of letters rogatory.[29] At one point, the Court had to correspond with the Ministry of Justice of the Czech Republic on the validity of the Court to issue discovery orders.[30] Not all discovery was in English. Despite this, the parties moved forward.

SD3 filed the SJ Motion on March 30, 2020. SD3 filed the SJ Motion after Count I fact discovery closed and both E&Y and PwC had issued their valuation reports. CSG opposed the SJ Motion on May 14, 2020. Briefing on the SJ Motion was completed in August 2020.

The parties continued the discovery process on Count II after completing the valuation discovery on Count I. On May 22, 2020, CSG made a large production of responsive documents. In this production was the J&T Business Plan. CSG had designated the J&T Business Plan as "Highly Confidential—Subject to Protective Order." This designation restricted access to the J&T Business Plan.

SD3 represents that PwC discovered the J&T Business Plan in March 2022.[31] PwC discovered the J&T Business Plan while preparing its expert report in connection with Count II. The J&T Business Plan is a document transmitted from CSG to J&T Banka on June 19, 2017. The J&T Business Plan contains a RETIA business plan for the period 2017—2021. SD3 represents that the J&T Business Plan was prepared prior to any litigation and is "subject to laws on representations to lenders, making the document reliable for valuation."[32]

---

[29] *See, e.g.*, D.I. No. 218.
[30] D.I. Nos. 253, 254, 256 and 259.
[31] Mot. ¶ 8.
[32] *Id*. ¶ 9 n.5.

5

On April 22, 2022, SD3 filed its "Sanctions Motion." The Sanctions Motion sought relief in connection with the J&T Business Plan. The Court denied the Sanctions Motions on June 8, 2022.[33] The Court denied the Sanctions Motion without prejudice to SD3 seeking relief under Superior Court Civil Rule 60 ("Rule 60") with proper notice to CSG. In addition, the Court provides that:

> [I]f SD3 wants to seek relief under Civil Rule 60, SD3 is entitled to a Rule 30(b)(6) deposition of CSG regarding the "J&T Business Plan" (as defined in the [Sanctions] Motion) so that SD3 can clarify whether the J&T Business Plan is a document containing a "[RETIA]-prepared business plan for the period 2017-2021" or is, to use CSG's characterization, a document created by CSG for J&T Banka for a loan and does not contain a RETIA prepared business plan "as part of RETIA's contemporaneous budgeting and business planning."[34]

SD3 took a Rule 30(b)(6) deposition of CSG. The first part of the deposition of Ilona Kadlecova began on August 9, 2022. According to SD3, CSG stopped the deposition and continued the deposition until September 6, 2022. Ms. Kadlecova testified that RETIA representatives (CFO and controller) provided CSG with the initial data for the J&T Business Plan. Ms. Kadlecova also noted that it was important that J&T Banka agreed with the assessed potential of RETIA as of June 2017. Ms. Kadlecova stated that the J&T Business Plan contained information from RETIA that was reviewed and adjusted by CSG in a back-and-forth process between the two entities. Ms. Kadlecova provides that the J&T Business Plan was a document prepared at the "instruction" of CSG so that Technology CS a.s. could obtain a loan to purchase RETIA.

As presented by the parties, the J&T Business plan falls somewhere between how it is characterized by SD3 or CSG. The J&T Business Plan clearly contains financial information

---

[33] D.I. No. 305.
[34] *Id.*

regarding RETIA; however, the J&T Business Plan does not appear to be "RETIA-prepared business plan for the period 2017-2021."

## III.    LEGAL STANDARD

Rule 60 governs relief from a final judgment or order.  Rule 60(a) allows any party in a civil action to file a motion to correct "clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission."[35]  In addition, Rule 60(b) permits the Court, upon such terms that are just, to vacate a final judgment, order, or proceeding for the following reasons:

> (1) Mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of judgment.[36]

A court applies those criteria with two important values in mind: "the integrity of the judicial process and the finality of judgments."[37]  "A Rule 60(b) motion is not an opportunity for a do-over or an appeal."[38]  A Rule 60(b) motion is also not "a substitute for a [Rule 59] motion for a new trial."[39]

"The determination whether to grant a motion for relief pursuant to Rule 60(b) rests in the sound discretion of the trial court."[40]  "Because of the significant interest in preserving the

---

[35] Super. Ct. Civ. R. 60(a).
[36] Super. Ct. Civ. R. 60(b).
[37] *Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*, 1996 WL 757274, at *1 (Del. Ch. Dec. 20, 1996).
[38] *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Gp. (Hldg.)*, 2012 WL 4847089, at *5 (Del. Ch. Oct. 11, 2012), *aff'd*, 67 A.3d 373 (Del. 2013).
[39] 1 Donald J. Wolfe & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 4.09[d][1] at 4-47 (2d ed. 2021).
[40] *Joseph v. Shell Oil Co.*, 1985 WL 21146, at *1 (Del. Ch. June 6, 1985).

finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted."[41]

Although not specifically identified in the rule, "[e]quitable principles may be taken into account by a court in the exercise of its discretion under Rule 60(b)."[42] The language of the rule incorporates equitable principles of fairness by calling for the court to grant relief "upon such terms as are just."[43]

SD3 is seeking relief under Rule 60(b)(2) and Rule 60(b)(6).[44]

"Rule 60(b)(2) affords a disappointed litigant an opportunity to obtain judicial reconsideration of the merits of his claim on account of 'newly discovered evidence.'"[45] Because everyone has an interest in the finality of judgments, Delaware courts have held that the newly discovered evidence must indicate "that an injustice is clearly threatened."[46]

To prevail under Rule 60(b)(2), the moving party must show:

> (1) the newly discovered evidence has come to his knowledge since the judgment;
> (2) that it could not, in the exercise of reasonable diligence, have been discovered for use before the judgment; (3) that it is so material and relevant that it will probably change the result; (4) that it is not merely cumulative or impeaching in character; and (5) that it is reasonably possible that the evidence will be produced at the trial.[47]

Rule 60(b)(6) is the "catchall provision of Rule 60(b)."[48] Delaware has adopted the "extraordinary circumstances" test for Rule 60(b)(6) motions.[49] The "extraordinary

---

[41] *Epstein v. Matsushita Elec. Indus. Co., Ltd.* (*In re MCA, Inc. S'holder Litig.*), 785 A.2d 625, 635 (Del. 2001).
[42] 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2857 (3d ed.) Westlaw (database updated Apr. 2022) [hereinafter Wright & Miller].
[43] Super. Civ. R. 60(b).
[44] In the *Plaintiff SARN SD3 LLC's Reply in Further Support of its Rule 60 Motion to Amend the Court's Count I Decision*, SD3 contends that it also sought relief under Rule 60(b)(3). The Motion does not seek relief under Rule 60(b)(3). In the Motion, SD3 specifically quoted language from Rule 60(b)(2) ("…newly discovered evidence…") and Rule 60(b)(6) ("…any other reason justifying relief from the operation of the judgment.") but did not reference Rule 60(b)(3) or relief due to fraud, misrepresentation, or other misconduct of CSC. Mot. ¶ 14.
[45] *Norberg v. Sec. Storage Co.*, 2002 WL 31821025, at *2 (Del. Ch. Dec. 9, 2002).
[46] *Credit Lyonnais Bank Nederland, N.V.,* 1996 WL 757274, at *1.
[47] *Levine v. Smith*, 591 A.2d 194, 202 (Del. 1991)(cleaned up).
[48] *MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A. 625, 634 n.9 (Del. 2001).
[49] *Jewell v. Div. of Soc. Serv.*, 401 A.2d 88, 90 (Del. 1979).

circumstances" standard defines the words, "any other reason justifying relief," in Rule 60(b)(6) as "vest[ing] power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."[50]  Rule 60(b)(6) requires a special showing—*i.e.*, the standard to succeed under Rule 60(b)(6) is more exacting than under the other subsections of Rule 60(b).[51]

## IV.    DISCUSSION

SD3 seeks to amend the Decision under Rule 60(b)(2) or (b)(6) in order to revise the Penalty Amount.  SD3 argues that the Court should consider a new PwC independent valuation of RETIA that includes consideration of the J&T Business Plan.  SD3 argues that relief is warranted because (i) the J&T Business Plan constitutes new evidence under Rule 60(b)(2); or (ii) CSG's conduct in producing the J&T Business plan constitutes extraordinary circumstances under Rule 60(b)(6).

CSG opposes the Motion, contending that the J&T Business Plan does not constitute "new evidence" as it was in the possession of SD3 prior to the Decision.  CSG does not directly address SD3's Rule 60(b)(6) argument.  Instead, CSG attacks the value of the J&T Business Plan and whether it should be used in a valuation.

The Court does not find that relief under Rule 60(b) is warranted.  The J&T Business Plan does not constitute newly discovered evidence.  The answer here lies in the undisputed timeline.

SD3 retained PwC on July 26, 2018.  PwC advised SD3 both as a valuation expert (Count I) and on litigation (Count II).  Although the Court needed to intervene, EY, CSG and RETIA provided financial information to PwC and PwC issued its valuation on

---

[50] *Id.* (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1949)).
[51] *MCA, Inc.*, 785 A.2d at 634 n.9.

9

March 10, 2020.  SD3 then moved for summary judgment on Count I.  The Court issued Decision on December 23, 2020 and the Supplemental Decision on November 15, 2021.

CSG produced the J&T Business Plan to SD3 on or about May 22, 2020.  PwC did not discover the existence of the J&T Business Plan until March 2022.  The time between production of the J&T Business Plan and the Decision is seven months.  The time between production of the J&T Business Plan and the Supplemental Decision is almost eighteen months**.**

With this timeline, SD3 cannot satisfy the test under Rule 60(b)(2).  SD3 discovered the J&T Business Plan after the Decision and the Supplemental Decision.  However, SD3 is unable to show that it could not, in the exercise of reasonable due diligence, have discovered the J&T Business Plan before the Court issued the Decision and the Supplemental Decision.  PwC has been actively involved and advising SD3 since July 26, 2018.  Discovery has been contentious, but CSG produced the J&T Business Plan to SD3 on or about May 22, 2020.  SD3 has not been shy in seeking the Court's involvement with the discovery process if a document was not produced or was improperly designated as "Highly Confidential."  Moreover, given some of CSG's tactics, SD3 has not merely relied upon CSG's representations when reviewing financial records or other types of document productions.

The Court finds that SD3 could have discovered the J&T Business Plan for use in the litigation prior to December 23, 2020 or November 15, 2021.  Accordingly, the Court will deny the Motion as failing to satisfy Rule 60(b)(2).

The Court also finds that SD3 cannot satisfy the more exacting standard of Rule 60(b)(6).  The analysis here is substantially similar to one under Rule 60(b)(2) as to

whether SD3 can show "extraordinary circumstances" exist that would warrant amending the Decision. The Court notes that CSG have identified and produced the J&T Business Plan earlier than May 22, 2020. CSG has not been entirely forthcoming or even consistent with its positions on valuation and discovery; however, SD3 should have been more diligent when it received the document production on May 22, 2020. CSG takes the position that the J&T Business Plan is not relevant to the Penalty Amount. SD3 and PwC disagree. The fact remains, however, that SD3 had the J&T Business Plan in May 2020 and, for some reason, did not identify it as relevant.

The Court and the parties have an interest in the finality of judgments. Rule 60(b)(2) and 60(b)(6) provide relief when circumstances warrant revisiting a final judgment. The Court finds that the Motion fails to demonstrate that relief is warranted under Rule 60(b)(2) or Rule 60(b)(6).

## V. CONCLUSION

For the reasons stated above, the Motion is **DENIED**.

**IT IS SO ORDERED.**

April 27, 2023
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:    File&ServeXpress